Good morning, Your Honor. Thank you, and may it please the Court. My name is Emily Harrell. I'm here representing Jarnaro Middleton. Mr. Middleton was found to be an armed career criminal at his original sentencing in 2006. He's been in custody since 2004. If you find for Mr. Middleton, he is now overserved the statutory penalty for being a felon in possession of a firearm. Let me ask you this question. Are we limited in our ability to dispose of this case, if we agree with you, by the certificate of perpetuability? In other words, meaning we would have to send it back and let the district judge re-sentence? Or can we do it here? Emily Harrell Well, I think that you would need to send it back. There are issues having to do with the other offenses that were, at his original sentencing, found to either be or not to be qualifying predicates. And so those issues are not directly before this Court, based on the certificate of appealability. So I think it would need to go back to the district court. Judge Goldberg Are you sure? Emily Harrell I'm not sure. But the certificate of appealability was as to the involuntary manslaughter offense. And the government has made the argument that the PWID offense, which was not counted as a qualifying predicate at his original sentencing, could possibly count. Judge Goldberg And you don't think we can decide? I mean, we could always expand the certificate of appealability. But without that, you don't think we could decide whether the government has basically waived the right to rely on that now because they failed to object at sentencing to the PSR? Emily Harrell Your Honor, I hadn't specifically considered that question. Judge Goldberg You argue it in your brief, don't you? Emily Harrell I do, fairly vigorously. I believe that they have waived it. Because just as if an individual defendant were to come in later and say, this offense no longer qualifies, therefore you should correct my pre-sentence report, and I'm no longer a criminal or a career offender, a district court judge would say, I'm sorry, too late. The sentencing is closed, and we can't do it. Judge Goldberg And that's what the Supreme Court did in Johnson, too, right? When they said that the residual clause was unconstitutionally vague, the government said in the Supreme Court, okay, let us go back because now we want to argue it under the force clause. And the Supreme Court said, you can't do that. You didn't preserve that at sentencing. We're not going to let you go twice. Emily Harrell That's correct. I had not specifically considered  Judge Goldberg Can I ask a question? Emily Harrell Sure. Judge Goldberg And then, I'm sorry, I don't want to get you too far into the weeds of what if, but it also does strike me that if this went back to the district court for re-sentencing, you couldn't re-sentence the defendant taking account of his cocaine trafficking offense, correct? That is no longer a predicate, so I don't see how you get to three anyway. Emily Harrell Well, so that's why I believe the government would want to argue that the PWID would somehow count. Judge Goldberg But then you have, at best, PWID and housebreaking, but let's bracket that for now. You still need the cocaine trafficking, but that's no longer a predicate. Emily Harrell That's correct. Judge Goldberg So I don't see how you get to three anyway. Why would you send it back? Emily Harrell You don't, but you can only get there if the sentencing is re-opened. Judge Goldberg Right. And once you re-open it, isn't it too late now to rely on cocaine trafficking? Emily Harrell Yes. Judge Goldberg Okay, so. Emily Harrell Yeah. Judge Goldberg It just seems odd to me that we would find ourselves in a procedure, and I understand this is making a bunch of heroic assumptions about where we're going to go, but it seems odd that we would find ourselves in a position where we would have to remand for re-sentencing, knowing that it would be futile and thereby extending an unlawful prison sentence. Emily Harrell I would be perfectly happy for you to decide the issue and not go back to the district court for that very reason, because he's over-served. If you find in his favor, he's over-served his sentence. The only issue would be, of course, that his supervised release term would change from five to three years, and also the offense would drop from a Class A to a Class C, I think that that would affect the term associated with any imposition of imprisonment. Judge Goldberg Could we talk a little bit about Hambright, where a man was charged with reckless or involuntary manslaughter. Emily Harrell Yes, sir. Judge Goldberg And there was no force involved in that. It was a sale of alcohol to someone who was drunk. Emily Harrell Yes, sir. Judge Goldberg And had a rec. Emily Harrell An underage. Judge Goldberg Yeah, an underage. Doesn't that affect the government's argument about the categorical, non-categorical approach? Emily Harrell I think that it very much makes it so that South Carolina involuntary manslaughter is an over-broad offense, which includes conduct that doesn't include any force, such that you don't even have to reach the recklessness argument if you want to just stop at Hambright. Because Mr. Hambright, while he was a nuisance to the community and had been selling alcohol out of his home for three years, his sale to the minor, a companion of the minor, the defendant, had no force whatsoever against the decedent. And so, therefore, you can be convicted of this offense in South Carolina having not used any force at all against the defendant, against the decedent. And that's what the force clause requires, is that you use, use, attempt, or threaten  And in Hambright, and in another case, DeLee, which I cite in my reply brief, the person was driving recklessly, overloaded van, careening across the line, went up onto a bank and flipped the van and killed some children. Reckless driving, and was convicted for involuntary manslaughter. Now, that's an indirect use of force, but again, not violent force against the person of another. So my argument would be that the South Carolina offense is overbroad, therefore, you actually don't need to reach the recklessness mens rea argument after Voisine, but in that regard, I don't think that Voisine changes the law of this circuit. Voisine and Castleman had specific application to the misdemeanor crime of domestic violence, and while it is true that use of force involves a direct application and an indirect application, and in this court, after Reed, that is true, that doesn't mean that a reckless use of that force should qualify as a violent felony under the Armed Career Criminal Act. The Armed Career Criminal Act and the misdemeanor crime of domestic violence statutes were passed at different times, they have different applications. They're to address different circumstances. A court in Voisine said with no doubt that when Congress passed the 922G statute that they sort of meant to, or at least knew, that they would sweep in some reckless garden variety assault and batteries, which as Armed Career Criminal Act requires, you know, the use of force. In Begay, while it's talking about the residual clause, it talks about the enumerated offenses being purposeful, violent, and aggressive, and it's unlikely that, you know, that language, that thought that something is supposed to be purposeful, violent, and aggressive would not apply to the other clause in the same statute. So, what I would imagine, all of the crimes under the Armed Career Criminal Act would need to be purposeful, violent, and aggressive. So that would be my argument there. So unless you have other questions, I'm happy to sit down. Thank you, Counsel. Mr. Watkins. Thank you, Chief Judge Bricker. Your Honors, may it please the Court, my name is Bill Watkins. I represent the government here. If I could start off where you started off, Judge Harris, I vehemently disagree that this man, where he resentenced today, that the trafficking conviction would somehow change the situation. You would be absolutely correct if I prosecuted an individual today and he turned out to have, let's say, two federal drug conspiracy charges and then a South Carolina trafficking charge. He would not be in ACC today. Correct. But I submit to you that there are men sitting in federal prison today who are armed career criminals and have state trafficking convictions, and those are illegal sentences. I get that, but you think you can go back and resentence the defendant today, and you can bring in the, I don't understand why, if he has to be resentenced at a new sentencing, you can now use that as a predicate. I don't get that. Because that's not, there is no retroactive decision that would apply to him. He's not retroactive. You're sentencing him again today. He would be sentenced. By hypothesis, he's being resentenced anew. And we would use the old guidelines that he was sentenced under except for statutory changes. So maybe I misunderstood, but you have a case you can send me for that, that when you resentence a defendant, it is as though it is a retroactive sentencing. Because there hasn't been a change in the guidelines. I'm not talking about a change in the guidelines. We now have a case that says, we were wrong all along. That thing never counted as a predicate. Your Honor, at this time, I still, I strongly believe that he would not be in a legal sentence if he were sentenced today, resentenced today with that trafficking conviction as a predicate. And why is that? Because at the time of his crime, it would be properly counted. No, it wouldn't. Our case... When he was sentenced, it would be properly counted. It would have been improperly counted because we have now clarified it was never a predicate. Well, Your Honor, I don't think we need to even get that far. Maybe not, because let's talk just very briefly about housebreaking. My understanding is that your office is either literally conceding or, on the facts and circumstances of this case, not contesting that housebreaking is not a predicate. Again, if a man committed a crime today and was prosecuted, housebreaking would not count. I don't... Though there are individuals where it has counted before and there was case law supporting that at the time. I'm sorry, so... What's your argument on housebreaking? Is housebreaking a predicate or not? It no longer is. Okay, so you want us to remand so that this person can be resentenced, using as predicates two crimes that are not predicates. At the time he committed the crimes, they were. No. Has the statute... There has been no change. Just the law has made clear that housebreaking was never a predicate. Neither was trafficking. He couldn't take advantage of the trafficking thing on habeas. But now, by hypothesis, he's not on habeas. He is being sentenced today, day now. Those two things are not predicates. You're saying you want us to extend his unlawful sentence so you can go back to the district court and try to convince the district court that two things that are not two-day predicate crimes ought to be held against him for ACCA purposes when he is sentenced today. Yeah, we have... The only issue is manslaughter. Does that count? That's why we're here today. It's for the district judge to decide those other issues when it comes back. Can I ask you something? I wonder whether... I mean, this all may turn out to be entirely hypothetical depending on how we come out on manslaughter. But this, I have looked at a bunch of other cases now where your office has conceded housebreaking. I just wonder whether your office would want to consider, if involuntary manslaughter turns out not to be a predicate, whether it really wants to continue to push this while this person sits in prison on what is, at least hypothetically now, an unlawful sentence, or whether you might consider doing one of those things you have done in the other housebreaking cases and just conceding that based on the unique facts, circumstances, and procedural history of this case, you wouldn't oppose a request for relief. Because otherwise we're going to have to make a whole lot of law. Well, Your Honor, that would be for my appellate chief to decide, not for me. Well, maybe you should take it back. Well, Your Honor, first of all, involuntary manslaughter, that certainly the government believes would fit as a crime or violence in this case. Clearly we have two issues here. You have the physical force element. How can someone be killed, the ultimate injury, without physical force being applied? I think it would be impossible. Castleman, of course, teaches us it can be direct or indirect force applied. So I think we certainly satisfy that element. So you say Hambright, Mr. Watkins, Castleman kind of changes the Hambright decision where the act for which he was prosecuted did not involve force? Your Honor, I don't agree with you, Judge Floyd, and here's why. I think if you look at Castleman. And you usually don't. Yes, sir, it doesn't usually turn out too well for me in district court or up here, but I'm used to that. Castleman, sprinkling of poison in a drink. No direct force would be applied under hypotheticals discussed there. Nonetheless, force is used insofar as the poison is employed. Hambright's a very similar situation, Judge. You have a man that recklessly employs alcohol to an underage person, knowing that it's Friday night, there's a ball game in town, and he knows what young boys do on Friday night. He employed the alcohol recklessly by giving it to the young men. And then we have the force is obviously the vehicle hitting the telephone pole. Much, I think, a similar analysis with the Castleman case. So I don't think Hambright somehow takes us out of the use of force and force being applied. I think Justice Thomas, if you read Voisin and you read his dissent in Voisin, Justice Thomas would probably agree with you, Judge Floyd, that Hambright shouldn't be within this force clause. The problem for Justice Thomas and Justice Sotomayor is they only had two votes. The majority goes with volitional conduct. As long as there's volitional conduct, you can put these matters within. Justice Thomas poses hypotheticals, for example, the text messaging father in his dissent where he recklessly takes an action, the car crashes, and his son goes into the windshield. The father's son goes into the windshield. Justice Thomas complains, well, under the majority's analysis, force has been used, and this could come under a force clause. Yes, he's right. That's what the majority decided. Again, Justice Thomas lost that decision, and, therefore, I don't see how Hambright impairs the government. What was the force in your mind in sprinkling the poison? In this case, what was the force? The force would be the body shutting down because of the effect of the poison. The poison was employed. It was used, and, therefore, while there was no impact as with a punch or a kick, you still have a substance that can do damage employed, used, and so as the body shuts down because of the poison, reacts because of the poison. So the force was the sprinkling? No, sir. The force would be, I think, the body shutting down. I believe it was former Justice O'Connor in an opinion that I believe you might have quoted in the Reid case that you employ the poison, you use the poison, the force involved is the effect it has on the body, the attack on the organs. And, yes, I will say that, you know, certainly the Supreme Court spoke very broadly with the term use that is indifferent. The court says whether the actor has the mental state of intention, knowledge, or recklessness with respect to the harmful consequences of his volitional conduct. And, of course, volitional, essentially you're making a choice, and recklessness is the standard for involuntary manslaughter, a conscious disregard of others' safety. So volitionally, in this categorical approach which we're under, that fits. And recklessness would fit according to Voisin. You know, a number of circuits have looked at this, and I believe the First Circuit has disagreed with extending Voisin to guideline situations or Armed Career Criminal Act. But four circuits have seen that it makes sense to extend it to further situations in the guidelines or the ACC. So I would submit in this case that we certainly have a use, and we have a killing in this case. Force is necessarily implied, and categorically this should come within the Armed Career Criminal Act. I would also point out that I know in the brief, counsel makes mention that involuntary manslaughter could be committed accidentally, and the courts have used this language. I disagree with that. The statute says criminal negligence. When our state courts use the word negligence, we have to read into that the criminal negligence, i.e. recklessness. As Judge Floyd knows better than me, I'm sure he's presided over several involuntary manslaughter trials while he was on the state court bench in South Carolina. You have to have reckless behavior to be convicted for involuntary manslaughter. You have to have that reckless behavior, and recklessness is sufficient under Voisin. Can I ask a question? I think we're talking about the gun cases, right? As I read the cases, it seemed like what was going on, but tell me if I'm wrong because it's confusing, was that the recklessness comes in the part where you just kind of negligently or mishandle the gun. So you have not been careful. You have been reckless about getting the initial handling of the gun. And then if you actually pull the trigger by accident, you can be convicted because you were reckless in the way you handled the gun, and then you pulled the trigger by accident. And so if that's right, my concern is that the only part where you actually use force, the pulling of the trigger, might be accidental, even though you recklessly got yourself into a position where you were mishandling a gun. Do you see what I'm saying? And I found these cases confusing, so if you can explain that to me, that would be great. You're on the way. There are statements in those cases that accidental handling of a firearm can give rise to right to a charge on involuntary manslaughter. Again, I think you have to read into that criminally negligently handling a firearm. Right, and I am. And so what I'm getting from the cases is that they're saying, like, basically the part where you didn't have a trigger lock on your gun or the part where you brought the gun to the argument and let it kind of fly around, all of that is where you get the criminally negligent recklessness. But the actual moment where you pull the trigger is just an accident, which wouldn't matter at all for state law purposes, but because there has to be a use of force. Then the moment where you pull the trigger has to be reckless, too. And I don't see the cases saying that. In fact, I thought I understood them to be saying if you even sort of volitionally pull the trigger, you can't get the involuntary manslaughter charge anymore. If you engage, you know, I don't see the cases splitting it up like that, to be honest with you. I don't see you can accidentally pull the trigger but somehow have reckless conduct in another prong of your behavior that overall fits into getting the charge. I think it's one issue. Did you act reckless in some regard that ultimately led to another individual dying? But I think you have to have acted recklessly when you pulled the trigger because nothing prior to that counts as use of force, does it? I think it sets in motion that use of force by you recklessly. Sets in motion is not the test. Like you set it in motion when you call the guy and say, meet me outside the bar. No one is going to say that's a use of force. Your Honor, I don't see the distinction. If I have a firearm and I'm recklessly twirling it and accidentally pull the trigger, and I shot someone in the courtroom, I have acted recklessly in employing force to shoot them. Whether I didn't mean to hurt anybody, but that's the definition of involuntary manslaughter. It's an unintentional killing without malice. But there has to be a reckless element of your conduct. I don't think we can break it down to when I say, well, it was an accident. I didn't mean to do it. Well, yes, but you handled the weapon recklessly and therefore it discharged. Well, looking at Begay, doesn't the Armed Career Criminal Act aim at state offenses that show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger rather than offenses that merely reveal a degree of callousness toward risk? Begay absolutely says that, Judge Floyd. As we know, it was looking at the residual clause there, which no longer exists, and talked about purposeful, violent, and aggressive conduct with those offenses. I think a good point would be we don't know, for example, whether Mr. Middleton, though this is a Johnson case, we don't know whether originally his involuntary manslaughter conviction fell under that residual clause or it was under the force clause. I would submit probably, though I know Winston, this court's president, forecloses making a distinction, but I still think it's worthy to note that insofar as we don't have any facts in the PSR about exactly what he did to commit involuntary manslaughter, it probably fell under the force clause, and that's why it was counted as a predicate, because without knowing a little bit more about the offense, it would have been more difficult for a district judge to use the residual clause. But yes, Begay does say that about the residual clause, Your Honor. I thought that the sentence that Judge Floyd just read says it about the ACCA as a whole, that the congressional intent behind the statute, no? Well, the congressional intent behind the statute, I agree, Judge Harris, is to keep dangerous individuals that engage in violent conduct off the streets. I would say if you look at Mr. Middleton's pedigree, he fits into that based on his criminal history, and involuntary manslaughter is part of the story and ought to be considered a crime of violence based on looking simply at its elements in a categorical approach. But you would admit that this would ordinarily be in the residual clause had it not been for Johnson, correct? As a predicate, make an involuntary manslaughter conviction, it would be under the residual clause, wouldn't it? But for Johnson, correct? I don't agree with that, Judge Gregory, Chief Judge Gregory. I think it could easily fall under the residual clause, but I think also a district judge could have used the elements clause and found it to be a crime of violence. Okay, let's look at what South Carolina has done, because that's what we're asked to do, we're required to do. How does South Carolina view it in terms of elements? They view it giving a minor alcohol or selling the alcohol that later results in the death of another person who was given the alcohol, minor. You're telling us that's the violence that's necessary and that's required. But it doesn't state it, does it? What it says is it has as an element the use, attempted use, or threatened use of physical force against the person of another. What physical force was done in that case that we're looking at, Humbert, that was against the person of another? Force. The actor, what force did he use? What was the force? The force would have to be the crashing of the vehicle. He wasn't there. He had no idea there was going to be an accident, let alone not there. His intent was to make a sale of alcohol, wrong as two left feet or shoes, whatever, because they were minors. But what was the connection, even connection, with an accident result? It had to be clairvoyant, wouldn't it? I'm sure there's no evidence that he wanted, well, I'm going to give him this because I don't want him later to be in an accident. It says right here, it says you're trying to shoehorn the government, not you, but when something disappears, rather than recognizing that it doesn't fit, you've got to find a way that it does. But it says attempted use against the person of another, against the person. That's the person acting, not that force happened somewhere down the line against the person in the realm of physics, and unfortunately, tragically here, but it said you do it against, force against the person. Where is the force against the person in the Humbert case? Where? That's common sense. Where is it? Your Honor, I think Justice Thomas again. No, I'm not talking about Justice Thomas right now. They were looking at another state. It wasn't South Carolina. We're looking at South Carolina, how South Carolina has morphed, blurred, whatever it calls, elements for this offense, and we're looking at a case. We don't have to speculate. This is what they said it was. States aren't looking at the federal government. The federal government is trying to get enhancements. They're trying to make any kind of, not any, but several types of activity criminal and punishable. They have different objectives. But we're looking, we're cabinet on a categorical approach. But tell me, where is the force against the person done by the actor? Mr. Humbert, knowing that there were two young men there, the facts of the case say the car was about 10 feet from his porch when he sold the alcohol to one young man, and he knows what they were doing that night. He was caught on an undercover call with the CI, essentially telling the young man, now don't you go out. I know what you all do on Friday night. I know you're going to drink this, and they're going to come back and get me if you get killed. So he knows the danger. He knows the force he is unleashing. No, no, no. That's foreseeability you just argued. It has nothing to do with force against the person. You just argued foreseeability. Ma'am. Did you not? Am I wrong? Yes. I think you have a proximate cause issue in the underlying case. Well, approximate cause doesn't give you force against the person. Matter of fact, it's just the object. It reads it out of it because if it's foreseeable, it doesn't matter whether it's force or not. They died. That's what you would say. But it requires force against the person. So keep on going. You've laid out foreseeability. Where's the force against the person? Selling the alcohol is the use, Your Honor. Okay. Transferring that alcohol, knowing. Use is use of force. Those alternatives all relate to force. Use, attempted use, threatened use, it still relates to the force, not selling anything. It's the castleman. It's employing poison. It's employing alcohol. It's Justice Thomas' hypothetical of the text messaging father, which he says, under the majority's reasoning, has to be force and a use of force. And that's essentially what Hambride is. I'm sorry. So in cases like Reed and Irby, we have described castleman as employing a device knowingly as a way to cause physical harm, intentionally acting to place the victim in the path of an inevitable force. So your argument would be that the defendant in Hambride employed alcohol knowingly as a device to cause physical harm? No, ma'am. I would argue that he employed alcohol recklessly. Okay. Then it doesn't fit within Irby and Reed because Irby and Reed are very clear, at least our court has held, that these indirect force cases are limited to what they were talking about, administering poison, pulling the chair out as the person is about to sit down, where you do it on purpose but indirectly. I just don't see, once you, I just don't understand how those indirect force cases can work anymore once you get rid of the knowing part, the obvious part. Because otherwise they're not about force at all. They're about selling alcohol to a minor, which is just not force. And reckless conduct under Boisine naturally should be extended in this circumstance, so says the Supreme Court. Well, with that look, Your Honor, I believe I'll sit down since my time has expired. Thank you. Thank you, counsel. I would vehemently disagree with Mr. Watkins' argument about being able to use a trafficking offense at a resentencing. Also, I would also disagree that we would use the old guidelines that were in effect because you use the guidelines that are in effect on the day of sentencing unless they are more punitive than they were at the previous sentencing. So I would disagree with that argument as well. I also have a very good argument to make for housebreaking, that it should not qualify, which I'm happy to make, but that would not be necessary should the other convictions not qualify. In South Carolina, you have to have, for involuntary manslaughter, you have to have an unintentional killing without malice while either engaged in an unlawful act, which is not a felony or not normally causing great bodily injury or death, or a lawful act with reckless disregard for the safety of others. The first prong can be met by a battery that doesn't necessarily, and in fact can't, be something that would normally cause bodily injury or death. For example, under the Chapman case, which I cite on page 21 of my brief, he had his shoulder pressed against the decedent's windpipe and was convicted of involuntary manslaughter because they said that was a battery that would not normally cause great bodily injury or death. So that action met the first prong. Under the second prong, which is normally associated with the use of a deadly weapon, the court is, the cases are confusing because they use language saying the negligent discharge of the weapon, the unintentional discharge of the weapon, the accidental discharge of the weapon, the unexplained discharge of the weapon. So, yes, you put yourself in a position where you're recklessly struggling with somebody over a loaded gun and it goes off accidentally and you can be charged with involuntary manslaughter. In the Meckler case, the woman, Ms. Meckler, had a shotgun and she was raising it up to her hip to cock it, and suddenly it goes off. So she's intending to cock the weapon, but it unexplicably discharges. She's entitled to be convicted of involuntary manslaughter. Her actions are not intentional in that regard, and I think the Armed Career Criminal Act requires that the actions be knowing and intentional and physical force against the person of another. Under the Hambright case, the sale of alcohol to one person who then gives it to another, who then drives his car is, while they find it's reasonably foreseeable that someone might drink and drive, particularly a teenager, that's not the use, attempted use or threatened use of physical force against the person of another. And with that, I'll have a seat. Thank you, Counselor. Thank you.
judges: Roger L. Gregory, Henry F. Floyd, Pamela A. Harris